SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
ANNE KRAMER (SBN 315131)
(akramer@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:   (617) 994-5800
Facsimile:   (617) 994-5801

*Attorney for Plaintiff Thomas Liu,*
*on behalf of himself and all others*
*similarly situated*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS LIU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>1. TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E, ET. SEQ. |

## I. INTRODUCTION

1. This class action case is brought by Plaintiff Thomas Liu against Defendant Uber Technologies, Inc. ("Uber"), alleging that Uber has violated federal law by discriminating against minority drivers through use of its "star rating system," in which Uber passengers are asked to evaluate drivers on a one to five scale after each ride, and which is used by Uber to determine which drivers get terminated (or "deactivated", in Uber's language). Uber's use of this system to determine driver terminations constitutes race discrimination, as it is widely recognized that customer evaluations of workers are frequently racially biased. Indeed, Uber itself has recognized the racial bias of its own customers. Thus, Uber's use of this customer rating system to decide employment terminations constitutes both disparate impact discrimination, as well as intentional discrimination, against non-white drivers.

2. Plaintiff brings this claim on behalf of himself and similarly situated Uber drivers across the country who have been subject to Uber's discriminatory use of its star rating system to terminate drivers. This claim is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

## II. PARTIES

3. Plaintiff Thomas Liu resides in San Diego, California, and worked for Uber in California as a driver until he was deactivated in October 2015.

4. Defendant Uber Technologies, Inc. ("Uber") is a headquartered in San Francisco, California.

## III. JURISDICTION

5. This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case arises under federal law, namely, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

6. The Northern District of California is a proper venue for this action pursuant to 28

U.S.C. § 1391(b)(1) because Defendant Uber Technologies, Inc. is headquartered in San Francisco, California. Furthermore, Uber engages in business activities in and throughout the State of California, including San Francisco.

## IV. STATEMENT OF FACTS

7. Uber is a San Francisco-based transportation service, which engages drivers across the country to transport riders.

8. Uber offers customers the ability to order rides via a mobile phone application, which its drivers then carry out.

9. In order to evaluate its drivers, Uber uses a passenger rating system, in which passengers are asked to rate their driver on a one to five scale after each ride. Uber calls this rating system its "star rating system."

10. In order to continue working for Uber, drivers must maintain a minimum average star rating. The minimum star rating is set by Uber management. The minimum star rating has frequently been set very high, even close to a perfect a score.

11. For instance, in order to be allowed to continue working for Uber, drivers in the San Diego area in 2015 were required to maintain a star rating of at least 4.6 on a scale of 1 to 5.

12. Uber has long known that relying on a system that depends on passenger evaluation of drivers is discriminatory, as Uber is aware that passengers frequently discriminate against Uber drivers. Indeed, in the past, before it allowed tipping on the app, Uber tried to justify its refusal to add a method for passengers to tip drivers through the app based upon its assertion that passengers discriminate against racial minorities, and Uber professed concern that allowing tipping would therefore discriminate against minority drivers in the wages they would receive.

13. It is also well recognized in social science research that employers' reliance on customer evaluation systems may lead to discriminatory impact on racial minorities.

14. Thus, Uber's continued use of its star rating system to determine driver terminations is racially discriminatory, both because it has a disparate impact on minority drivers and because Uber's continued use of this star rating system constitutes intentional discrimination against minority drivers.

15. In October 2015, Plaintiff Thomas Liu was deactivated by Uber because his average star rating fell below 4.6.

16. Plaintiff Liu is Asian and from Hawaii and speaks with a slight accent. While driving for Uber, Plaintiff Liu noticed passengers appearing hostile to him, which appeared to him to be a result of racial discrimination. For example, he noticed riders cancelling ride requests after he had already accepted the ride and the rider was able to view his picture. He also experienced riders asking where he was from in an unfriendly way.

17. Plaintiff alleges that Uber's use of the passenger star rating system to determine terminations had a disparate impact on him, as well as other minority drivers across the United States.

18. Although Uber drivers are classified as independent contractors, they are actually employees under federal law.

19. Drivers perform a service in the usual course of Uber's business, since Uber is a car service that provides transportation to its customers, and drivers such as Plaintiff Liu have performed that transportation service. Uber holds itself out as a transportation service, and it generates its revenue primarily from customers paying for the very rides that its drivers perform. Without drivers to provide rides for Uber's customers, Uber would not exist.

20. Uber also requires its drivers to abide by a litany of policies and rules designed to control the drivers' work performance. Uber retains the right to terminate drivers at any time in its discretion. Uber may terminate a driver if the driver behaves in a way that Uber believes is inappropriate or has violated one of Uber's rules or standards. As set forth here, drivers are also

subject to termination based on Uber's system of using customer rating feedback; drivers can be terminated if their average star rating falls below a minimum threshold set by Uber.

21. When driving for Uber, Uber drivers are not engaged in their own transportation business. Instead, when driving Uber customers, drivers wear the "hat" of Uber.

22. Uber does not require drivers to possess any skill above and beyond that necessary to obtain a normal driver's license.

23. Drivers' tenure with Uber is for an indefinite amount of time.

24. Uber provides the drivers with the primary instrumentality with which they can perform services for Uber because Uber only derives a benefit from the drivers' labor when they use Uber's software.

25. Uber sets the method by which drivers' pay is calculated.

26. Drivers must undergo background checks in order to drive for Uber. At times, Uber has required drivers to attend training classes and pass a written test as a prerequisite to driving for Uber. At other times, Uber has required drivers to undergo retraining, after they have been terminated, in order to work again as a driver.

27. Drivers' vehicles must meet Uber's quality standards, which it determines and may change at any time at its sole discretion.

28. Uber monitors drivers' performance and may suspend or terminate drivers who do not accept enough rides, cancel too many rides, do not maintain high customer satisfaction ratings, do not take what Uber deems to be the most efficient routes, or engage in other conduct that Uber, in its sole discretion, may determine constitutes grounds for suspension or termination.

29. The California Court of Appeal ruled that Uber drivers are likely to be determined to be employees under California state law in <u>People of the State of California v. Uber Techs., Inc., et al</u>., Cal. 1st Dist., A160701, A160706 (October 22, 2020). Uber drivers

have also been held to be employees under various other state regulation. Plaintiff contends that Uber drivers are employees under federal anti-discrimination law as well.

30. Uber drivers are engaged in interstate commerce. At times, drivers transport passengers across state lines. Furthermore, drivers are engaged in interstate commerce insofar as they transport passengers who are within the flow of interstate commerce; indeed, drivers often drive passengers to or from airports, train stations, and bus stations, as part of their interstate journeys.

## V. CLASS ALLEGATIONS

31. Plaintiff brings this case as a class action on behalf of all minority Uber drivers across the country who have been terminated based upon Uber's star rating system.

32. This class meets prerequisites of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(2) and 23(b)(3) specifically, in that:

   a. The class is so numerous that joining all members is impracticable. The exact number of the members of the class is unknown, but numerous (likely hundreds, if not thousands) of non-white Uber drivers across the country, as well as in California, have been terminated based on Uber's use of the star rating system. As a result, joinder of all these individuals is impracticable.

   b. There are questions of fact and law common to all of these potential class members, because all of these individuals have been terminated based upon Uber's use of its star rating system.

   c. The claims of the named plaintiff is typical of the claims of the drivers across the country who have been subject to Uber's use of the star rating system to terminate drivers.

    d. Plaintiff and his counsel will fairly and adequately represent the interests of the class.  The named plaintiff has no interests adverse to or in conflict with the class members whom he proposes to represent.  Plaintiff's counsel are well qualified to litigate this case, as they have been recognized as leading counsel nationally for representing the rights of employees in class action and other employment litigation across the nation.

    e. The questions of law or fact common to all members of each class predominate over any questions affecting only individual members.  The common questions include, among other things, whether Uber's use of its star rating system is racially discriminatory.

    f. Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims.  Among other things, individual adjudications would result in highly inefficient duplication of discovery, legal briefing, court proceedings, and the risk of inconsistent legal rulings.  Further, the alternative to a. class action may be no redress for many Uber drivers across the country who would not litigate these claims individually.

## VI.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

33.    Plaintiff Thomas Liu timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") prior to filing this complaint.  The EEOC issued a Dismissal and Notice of Rights on or about August 7, 2020.  This lawsuit is being filed within 90 days of receipt of the Dismissal and Notice of Rights letter.

# COUNT I
# RACE DISCRIMINATION
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2

Plaintiff re-alleges and incorporates the above paragraphs by reference as if fully set forth herein. Uber's use of its star rating system to terminate drivers constitutes unlawful discrimination based on race, both because it has a disparate impact on non-white drivers and because Uber is aware that passengers are prone to discriminate in their evaluation of drivers, but Uber has continued to use this system, thus making it liable for intentional race discrimination.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

a. Find and declare that Uber's use of the star rating system constitutes discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.;

b. Enter an injunction (which includes public injunctive relief) enjoining Uber from continued use of its star rating system to determine driver terminations;

c. Certify a class action pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) and appoint Plaintiff as a class representative and his counsel as class counsel;

d. Award compensatory damages, including back pay, for class members who have been terminated due to Uber's unlawful use of the star rating system;

e. Award any other damages that may be appropriate, including for emotional distress and punitive damages, for drivers who have been terminated based upon Uber's discriminatory use of its star rating system;

f. Award all costs and attorneys' fees incurred prosecuting this action;

g. Award interest;

h. Award any other relief to which Plaintiff and class members may be entitled.

Respectfully submitted,

THOMAS LIU, on behalf of himself and all others similarly situated,

By his attorney,

*/s/ Shannon Liss-Riordan*

Shannon Liss-Riordan, SBN 310719
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com

Dated: October 26, 2020