UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LIU,<br><br>        Plaintiff,<br><br>   v.<br><br>UBER TECHNOLOGIES INC.,<br><br>        Defendant. | Case No. 20-cv-07499-VC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 59 |

The motion to dismiss the third amended complaint is granted.

A plaintiff in a disparate impact case must allege three elements: "(1) a significant disparity with respect to employment for the protected group, (2) the existence of a specific employment practice or set of practices, and (3) a causal relationship between the identified practice and the disparity." *Liu v. Uber Technologies, Inc.*, 551 F. Supp. 3d 988, 990 (N.D. Cal. 2021) (citing *Freyd v. University of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021)).

Liu alleges that terminations at Uber occur on a racially disparate basis because of the company's reliance on customer ratings. In his first amended complaint, Liu plausibly alleged that racial discrimination could affect customer ratings, including in the rideshare industry. These allegations go primarily to the second and third elements. But Liu did not adequately allege that this legitimate concern about racial discrimination actually manifested itself in driver terminations at Uber, and so he did not satisfy the first element. *Liu*, 551 F. Supp. 3d at 991.

In his second amended complaint, Liu attempted to address this problem by conducting a survey of Uber drivers. The survey asked drivers to check a box indicating their race, and it asked, "If you have been deactivated by Uber, was it because your ratings were too low?"

According to Liu, the results of the survey demonstrated that minority drivers were terminated for their ratings at a higher rate than white drivers. But, as explained in a prior ruling, this survey was "essentially meaningless." *Liu v. Uber Technologies, Inc.*, No. 20-CV-07499-VC, 2022 WL 1613285, at *2 (N.D. Cal. May 23, 2022). Because the survey focused only on drivers who had been deactivated, it could show a disparity between white and minority drivers, even if there was no actual disparity given the total driver population. *See id.* at *1. It was additionally flawed because it asked whether drivers identified as "Latinx," a term that, as Liu himself concedes, likely led many confused Latino respondents to identify as "other." *Id.*

In response to the dismissal, Liu made one change to his complaint. In a footnote to his third amended complaint, Liu explains that his counsel sent a follow-up email to survey respondents who answered "no" to the initial survey. According to Liu, of those drivers who responded to that follow-up, 51.7% stated that they had not been deactivated at all.

This new information makes Liu's complaint worse, not better. As previously explained, "Liu is correct to emphasize that a survey described in a complaint alleging racial disparity need not be put to the same rigorous test that might apply at the summary judgment stage. But a survey must provide at least some information from which racial disparity can be plausibly inferred." *Id.* at *2. The original survey was phrased in a way that seemed to elicit responses only from drivers who had been deactivated—not Uber's total driver population. The fact that a number of Uber drivers misunderstood this confusingly worded survey makes it even less useful. It certainly does not help Liu plead the first element of a disparate impact claim—namely, "a significant disparity with respect to employment for the protected group."

Lest there be any misunderstanding, this is not to suggest that a plaintiff must always include information about the effect of an employment practice on the defendant's workplace to plead the first element of disparate impact claim. Sometimes the disparate impact created by an employment practice will be self-evident, potentially obviating the need for further allegations about the resulting disparity. Take, for example, *Jenkins v. New York Transit Authority*. 646 F. Supp. 2d 464 (S.D.N.Y. 2009). There, the plaintiff's religion required her to only wear skirts,

and she brought a disparate impact claim after she was fired from her job as a bus operator for refusing to wear pants instead. *Id.* at 467–68. The defendants argued that the plaintiff, notwithstanding her personal experience, had not stated a disparate impact claim because such a claim "requires an allegation that an employer's policy has had a statistically significant, disproportionate, and negative effect on one protected group as compared to others." *Id.* at 469. The court rejected this argument. Because it was "plain" that the policy would disparately affect women of the plaintiff's religion, there was no need for statistical or other evidence about the results of that practice in the workplace. *Id.* at 470. One can imagine other policies that would, on their face, disparately affect a protected class, and a plaintiff would not need to point to any facts showing the resulting disparate impact to challenge those policies.

Here, in contrast, Liu has plausibly alleged that racial bias *could* affect customer ratings in the rideshare industry, and so use of those ratings in Uber's employment decisions *could* cause a disparate impact. But his allegations are not so strong as to create an inference that use of the ratings will *always* cause a disparate impact, in the same way that a ban on skirts will always cause a disparate impact for members of a religion that requires skirts. Therefore, Liu must include non-conclusory allegations about the impact of the challenged practice at the actual company he is suing. But his allegations about the effects of the practice at Uber are incoherent—even more so now than before.

As stated in prior rulings, it is hardly fanciful to suspect that Uber's practice of terminating drivers based on customer ratings negatively affects minority drivers. Nor, as previously noted, is a survey necessarily the only way a plaintiff in a case like this might satisfy their pleading burden with respect to the first element of a disparate impact claim. The problem is not with Liu's theory, but with his failure to develop meaningful factual allegations in support of it (and with his counsel's apparent failure to put thought or effort into the endeavor). Because the Court is not convinced that it would be impossible for Liu to state a disparate impact claim, he will be given one final chance to file an amended complaint. But if he fails to state a claim next time, dismissal will be with prejudice. Liu and his counsel have been given plenty of

chances—arguably more than enough—to state a claim. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008) (explaining that a district court may deny leave to amend after "repeated failure to cure deficiencies by amendments previously allowed"). Any amended complaint is due within 28 days of this order. If no amended complaint is filed by that date, dismissal of the third amended complaint will be with prejudice.

**IT IS SO ORDERED.**

Dated: September 28, 2022

VINCE CHHABRIA
United States District Judge